UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

    GREAT FOOD GREAT FUN, LLC,                      BK 17-11557 CLB
    d/b/a WING CITY GRILLE,


                    Debtor,                            DECISION & ORDER
------------------------------------------------------

    -AND-

------------------------------------------------------

In re
                                                        BK 17-11558 CLB
    PROFESSIONAL HOSPITALITY, LLC,
    d/b/a VILLAGE CASINO RESTAURANT,


                    Debtor.
------------------------------------------------------

                                      Andreozzi Bluestein LLP
                                      Daniel F. Brown, Esq., of counsel
                                        9145 Main Street
                                        Clarence, New York 14031
                                        Attorney for Debtors


                                        Office of the New York State Attorney General
                                        Louis J. Testa, Esq., of counsel
                                        Civil Recoveries Bureau
                                        Bankruptcy Litigation Unit
                                        The Capitol
                                        Albany, New York 12224
                                        Attorneys for New York State Department of
                                        Taxation and Finance

Bucki, Chief U.S.B.J., W.D.N.Y.

Section 1141(c) of the New York Tax Law provides that upon a failure to adhere to noticing requirements, the bulk purchaser of business assets may be held personally liable for certain tax obligations of the seller.  Pursuant to this provision, the debtors in these proceedings assumed liability for sales taxes that their predecessors had a duty to remit.  In now objecting to the proofs of claim filed by the State of New York, the debtors contest only the priority status of the obligation.

Between 2004 and 2010, Steven Carlson was the owner of Car-Kid Development, Inc., and Carlson Food Enterprises, Inc.  Both of these corporations operated restaurants but failed to remit significant sales taxes collected from their customers on behalf of the State of New York.  In 2011, for no consideration, Steven Carlson caused his corporations to transfer all of their assets to Best Wings, LLC, a New York Corporation owned by his son, Andrew Carlson.  Thereafter, Andrew Carlson caused Best Wings, LLC, to transfer the assets previously owned by Car-Kid Development, Inc., to Great Food Great Fun, LLC; and to transfer the assets previously owned by Carlson Food Enterprises, Inc., to Professional Hospitality, LLC. Again, no consideration was exchanged.

On July 24, 2017, Great Food Great Fun, LLC ("Great Food") and Professional Hospitality, LLC ("Professional Hospitality") filed petitions for relief under Chapter 11 of the Bankruptcy Code.  In both cases, the New York State Department of Taxation

and Finance promptly filed a proof of claim for sales taxes that Car-Kid Development and Carlson Food Enterprises had failed to remit. Great Food and Professional Hospitality now object to these proofs of claim.

New York Tax Law § 1141(c) includes the following provision:

> "Whenever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of business, the purchaser, transferee or assignee shall at least ten days before taking possession of the subject of said sale, transfer or assignment, or paying therefor, notify the tax commission by registered mail of the proposed sale and of the price, terms and conditions thereof whether or not the seller, transferrer or assignor, has represented to, or informed the purchaser, transferee or assignee that he owes any tax pursuant to this article, and whether or not the purchaser, transferee, or assignee has knowledge that such taxes are owing, and whether any such taxes are in fact owing."

Section 1141(c) further provides that in the event of a failure to complete the above stated noticing procedure, the purchaser, transferee or assignee "shall be personally liable for the payment to the state of any such taxes theretofore or thereafter determined to be due to the state from the seller, transferrer or assignor." Pursuant to the statute, however, this personal liability "shall be limited to an amount not in excess of the purchase price or fair market value of the business assets sold, transferred or assigned to such purchaser, transferee, or assignee, whichever is higher."

Best Wings, LLC, failed to give the New York State Tax Commission a timely notice of its acquisition of assets from Car-Kid Development, Inc., and from Carlson Food Enterprises, Inc.  As a consequence, Best Wings, LLC, became personally liable for the outstanding sales taxes that its predecessors had failed to remit, but in an amount limited to the greater of the purchase price or the fair market value of the transferred assets.  Because Best Wings paid no consideration, it became liable for the fair market value of the assets.  Subsequently, Great Food and Professional Hospitality similarly failed to notify the Tax Commission of their acquisition of assets.  Again, because no consideration was exchanged, Great Food and Professional Hospitality became liable for their predecessors' unpaid taxes up to the fair market value of the transferred assets.

The New York State Department of Taxation and Finance now calculates that by reason of the bulk sale provisions of New York Tax Law § 1141(c), Great Food is liable for an unsecured priority obligation of $176,889.65, on account of a portion of the sales taxes owed by Car-Kid Development, Inc.; and that Professional Hospitality is liable for an unsecured priority obligation of $252,053.59, on account of a portion of the sales taxes owed by Carson Food Enterprises, Inc.  The debtors do not dispute the amount that is due and owing.  Rather, their sole remaining contention is that these claims should be allowed only as general unsecured obligations, without priority.

Discussion

Section 507 of the Bankruptcy Code recognizes the priority of certain claims. In relevant part, subdivision (a) of this section provides as follows:

> "The following expenses and claims have priority in the following order: . . . (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for . . . . (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."

Thus, under subparagraph (C), the eighth priority extends to taxes that satisfy two conditions. First, the tax must be one that is required to be collected or withheld. Notably, this first prong relates only to the nature of the tax, without regard to the identity of the party charged with a duty of collection. The second condition then mandates that the obligation must be a tax for which "the debtor is liable in whatever capacity."

The State of New York requires that merchants collect various sales taxes and then remit those taxes to the Department of Taxation and Finance. N.Y. TAX L. Art. 28 (McKinney 2008). Further, "every person required to collect any tax imposed by [Article 28] shall be personally liable for the tax imposed, collected or required to be collected under this article." N.Y. TAX L. §1133 (McKinney 2008). Here, New York imposed personal liability on Car-Kid Development, Inc., and Carson Food Enterprises, Inc., for sales taxes due on various transactions that occurred between 2004 and 2010. Pursuant to New York Tax Law § 1141(c), portions of this liability were extended to Best Wings, LLC, and then to the debtors after their bulk acquisition of

corporate assets.

In the present instances, the State satisfies the first condition of 11 U.S.C. § 507(a)(8)(C), in that the underlying tax was one that was required to be collected. The claims then fulfill the second condition for priority, in that they are obligations for which "the debtor is liable in whatever capacity." The phrase "whatever capacity" is sufficiently broad to include not only the initial duty to collect taxes, but also any subsequent liability resulting from a bulk transfer without proper notice to the state.

The current law regarding bankruptcy priorities contrasts sharply with the statutory provisions in effect prior to enactment of the Bankruptcy Code in 1978. Previously, for purposes of distribution of estate property, the Bankruptcy Act granted a fourth priority for "taxes which became legally due and owing by the bankrupt to the United States and to any State or any subdivision thereof which are not released by a discharge in bankruptcy." Bankr. Act, § 64(a)(4) (formerly codified at 11 U.S.C. § 104(a)(4))(repealed 1978). For a definition of taxes not then released by a bankruptcy discharge, we turn to section 17(a) of the Bankruptcy Act. It provided in relevant part that "a discharge in bankruptcy shall not release a bankrupt from any taxes . . . (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over." Bankr. Act, § 17(a)(1) (formerly codified at 11 U.S.C. § 35)(repealed 1978). Prior to 1978, therefore, priority attached only to taxes that the debtor itself had collected but failed to remit. By its change of the statutory language in the 1978 Code, Congress extended priority to collected taxes for which the debtor was liable,

whether or not it was the debtor itself that had collected the taxes in question.

Finally, the debtors argue that the disputed obligations are excise taxes whose priority should be defined by 11 U.S.C. § 507(a)(8)(E).  This section generally grants priority to excise taxes, but only "for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition."  11 U.S.C. § 507(a)(8)(E)(i).  Admittedly, sales taxes satisfy the definition of an excise tax.  Nonetheless, priority status under section 507(a)(8)(C) is separate from priority status under section 507(a)(8)(E).  One is not exclusive of the other.  In *DeChiaro v. New York State Tax Com'n*, 760 F.2d 432 (2d Cir. 1985), the Court of Appeals reached this conclusion in the context of a challenge to dischargeability.  Pursuant to 11 U.S.C. § 523(a)(1)(A), a bankruptcy discharge does not discharge an individual debtor from any debt for a tax entitled to priority under 11 U.S.C. § 507(a)(8).  In considering the reach of priority under section 507(a)(8)(C) and (E), the Court held "that the overlap between these provisions must be resolved by holding that Congress intended to differentiate between two categories of excise taxes and that the trust fund tax provision [of section 507(a)(8)(C)] excepts from discharge those excise taxes required to be collected from third parties."  760 F.2d at 435.

For the reasons stated herein, the objections of the debtors are overruled.  Accordingly, in the cases of both Great Food Great Fun, LLC, and Professional Hospitality, LLC, the New York State Department of Taxation and Finance will be allowed a priority claim for sales taxes due on transactions of the debtors'

predecessors during the tax periods that ended prior to November 30, 2010.

So ordered.

Dated: May 28, 2020 /s/ Carl L. Bucki
Buffalo, New York Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.